**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR-09-21-M |
| ) | |
| JOHN CHARLES FLETCHER, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is defendant John Charles Fletcher's ("Fletcher") Motion to Adopt Co-Defendant Johnson's Motions to Suppress Title III Wiretaps with Brief in Support, filed May 14, 2009. On May 22, 2009, the government filed its response. Based upon the parties' submissions, the Court makes its determination.

I.     Introduction

On July 15, 2008, the government filed an application for a Title III wiretap to intercept the communications of Kevin Dewayne Wright over the target telephone. On July 15, 2008, United States District Judge Tim Leonard issued an order granting the application and ordering the wiretapping of the target telephone. On July 16, 2008, Judge Leonard issued an Amended Order Authorizing Interception of Wire Communication ("July 16, 2008 Wiretap").[1]

On August 14, 2008, the government filed an application to continue the interception of the communications of Kevin Dewayne Wright over the target telephone and to initiate interception of the communications of new suspects/targets, including Fletcher, over the target telephone. On

---

[1] The only apparent difference between the Order and the Amended Order is the elimination of the IMSI number in section D of the Amended Order that discusses probable cause and identification of the target cell phone.

August 14, 2008, United States District Judge Robin J. Cauthron issued an order granting the application and authorizing the interception of the communications ("August 14, 2008 Wiretap").

Finally, on August 22, 2008, the government filed an application for a Title III wiretap to intercept the communications of Fletcher, Tuesday Johnson, and Wright over a second cellular telephone. On August 22, 2008, Judge Cauthron issued an order granting the application and authorizing the interception of the communications ("August 22, 2008 Wiretap").

Fletcher now moves the Court to suppress the July 16, 2008 Wiretap, the August 14, 2008 Wiretap, and the August 22, 2008 Wiretap, and all information obtained from those wiretaps. Fletcher asserts three primary basis for the suppression of this evidence: (1) the authorization for the wiretapping was invalid; (2) the court lacked authority to intercept communications outside the territorial jurisdiction of the court; and (3) the government has not shown necessity.

II.   Discussion

   A.   Invalidity of Authorization

Fletcher asserts that the wiretaps should be suppressed because the orders authorizing the wiretaps did not identify "the person authorizing the application" as required by statute. *See* 18 U.S.C. § 2518(4)(d). Instead of naming a particular person, who is actually named in the government's applications, the orders reference the necessary authorization "by an appropriate official of the Criminal Division, United States Department of Justice, pursuant to power delegated to that official by special designation of the Attorney General under the authority vested in him." July 16, 2008 Amended Order at 4; August 14, 2008 Order at 4; August 22, 2008 Order at 4.

While the United States Court of Appeals for the Tenth Circuit has found that the failure to name the specific Department of Justice officials who had authorized a wiretap application in the

order authorizing the wiretap renders the order facially insufficient under 18 U.S.C. § 2518(10)(a)(ii), the Tenth Circuit has held that such failure constitutes a technical defect that does not undermine the purposes of the statute or prejudice the defendant and that such failure does not warrant suppressing the wiretap evidence. *United States v. Radcliff*, 331 F.3d 1153, 1160-63 (10th Cir. 2003). Accordingly, the Court finds that while the failure to name the specific Department of Justice officials who had authorized the wiretap applications at issue in the orders issued by the district judges renders the orders at issue facially insufficient, the Court finds that such failure does not warrant suppressing the wiretap evidence. The Court, therefore, finds that the motion to suppress should not be granted on this basis.

Fletcher further asserts that the July 15, 2008 Application and the July 16, 2008 Amended Order were not authorized by the Attorney General and that the July 16, 2008 wiretap should be suppressed on this basis. Specifically, Fletcher asserts that the Department of Justice's authorization for interception order application granted access to the IMSI[2] number but did not mention access through the IMEI/ESN number; whereas, the July 15, 2008 Application requested access to both the IMEI/ESN[3] and the IMSI number, and the July 16, 2008 Amended Order granted access to only the IMEI/ESN number.

An order authorizing the interception of wire, oral, or electronic communication shall specify "the nature and location of the communication facilities as to which, or the place where, authority to intercept is granted." 18 U.S.C. § 2518(4)(b). While there is some deviation among the

---

[2]The International Mobile Subscriber Identity number is encoded on a removable computer chip which may be placed in another similarly equipped telephone.

[3]The ESN is a unique number hardwired into every cell phone.

authorization, application, and amended order regarding whether the access will be to the IMSI and/or the IMEI/ESN number, the authorization, the application, and the amended order all set forth the same telephone number as the target of the interception. The Court finds this is all the particularity that the law requires. *See United States v. Duran*, 189 F.3d 1071 (9th Cir. 1999). Accordingly, the Court finds that the July 16, 2008 Wiretap should not be suppressed on this basis.

### B. Jurisdiction

Fletcher contends that the wiretaps should be suppressed because the subject orders granted authorization to intercept communications outside the territorial jurisdiction of the Court even though the subject applications did not request such an authorization. Because the target telephones did not leave the Western District of Oklahoma during the pendency of the wiretaps and there were, thus, no interceptions outside the territorial jurisdiction of the Court, the Court finds the wiretaps should not be suppressed on this basis.

### C. Necessity requirement

"A wiretap authorization order is presumed proper, and a defendant carries the burden of overcoming this presumption." *United States v. Castillo-Garcia*, 117 F.3d 1179, 1186 (10th Cir. 1997). Section 2518(1)(c) provides that a Title III application shall include: "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

> The "necessity" requirement of Title III is not an "exhaustion" requirement. In examining necessity challenges to wiretap orders, we have repeatedly held that law enforcement officials are not required to exhaust all other conceivable investigative procedures before resorting to wiretapping. Rather, that section of the statute serves to insure that wiretapping is not used in situations where traditional investigative techniques would suffice to expose the crime.
> \*   \*   \*

> To obtain an electronic surveillance order, the government must explain fully in its application what investigative techniques have been tried against the target of the wiretap. If any of the four categories of normal investigative techniques referred to in the legislative history of Title III have not been tried, the government must explain with particularity why each of such untried techniques would be either unsuccessful or too dangerous. Those investigative procedures are: (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants. In addition, if other normal investigative techniques such as pen registers or trap and trace devises have not been tried, a similar explanation must be offered as to why they also would be unsuccessful or too dangerous.
>
> \*   \*   \*
>
> Whether other normal investigative techniques must also be explored before turning to wiretaps will depend on the unique circumstances of each investigation.

*Castillo-Garcia*, 117 F.3d at 1187-88 (internal quotations and citations omitted).

"[G]eneralities, or statements in conclusory language of the statute, are insufficient to support a wiretap application. The statements must be factual in nature and they must specifically relate to the individuals targeted by the wiretap." *Id.* at 1188. "However, the government need not exhaust or explain its failure to exhaust every *conceivable* investigative procedure before resorting to wiretapping." *Id.* (emphasis in original) (citations omitted).

### 1.   July 16, 2008 Wiretap

In its application, the government states that normal investigative procedures have been tried with limited success, reasonably appear unlikely to succeed if continued, reasonably appear unlikely to succeed if tried, or are too dangerous to employ. Specifically, in his affidavit R. Clayton Simmonds, Special Agent of the Federal Bureau of Investigation, stated that physical surveillance has been attempted on several occasions during the investigation and that said surveillance "merely

confirms meetings between individuals and does not identify the purpose or nature of the meetings." Affidavit of Special Agent Simmonds in support of July 15, 2008 Application at ¶ 25. Special Agent Simmonds further stated that during past physical surveillance of Wright, officers were spotted during a narcotic transaction and that other drug dealers in the area have mentioned to cooperating witnesses that they were hesitant to finish drug transactions due to the presence of unknown vehicles. *Id.* Additionally, Special Agent Simmonds stated that "[t]he area of Garden Days/Garden Oaks is insulated by the North Canadian River and the residents in the area are very suspicious of new people or vehicles in the area", that "[t]here are no locations where law enforcement can sit to observe **Wright's** residence that will not arouse the suspicion of neighbors" and that "**Wright** has expressed suspicion about unfamiliar vehicles in his neighborhood." *Id.* at ¶¶ 25-26. Finally, Special Agent Simmonds stated that there are multiple addresses associated with Wright and that having these multiple addresses increases the likelihood of Wright detecting surveillance as he travels from place to place. *Id.* at ¶ 29.

With respect to pen registers and telephone tolls, Special Agent Simmonds stated that while pen registers and telephone toll records have been used in this investigation, these tools do not identify the individuals actually talking on telephones or the content of their conversations, cannot identify the nature or substance of the conversation or differentiate between legitimate calls and calls for criminal purposes. *Id.* at ¶¶ 30-31. Further, Special Agent Simmonds stated that these techniques have been exhausted and are not expected to yield any more results other than identifying telephone numbers in contact with the target telephone. *Id.*

In his Affidavit, Special Agent Simmonds also stated that a search of Wright's residence at 3317 Northeast 12th Street:

>will likely not identify the scope of the **Wright** organization, its sources of supply, or additional assets of the organization. Further, since **Wright** is associated with at least two other houses, but where no probable cause exists to request a search warrant, any attempted execution of warrants would merely apprise **Wright** of law enforcement interest in his criminal activities. While numerous individuals have been identified by pen register analysis, no probable cause exists to search their residences, if the residence address is known. Other potential conspirators identified to date are known to move frequently and not reside anywhere permanently.

*Id.* at ¶ 33. With respect to the use of arrest warrants and suspect interviews, Special Agent Simmonds stated that Wright and other potential conspirators have been arrested numerous times and have never been known to cooperate and that "[s]everal members of the Shotgun Crips have been arrested and approached to cooperate. Most of the individuals refused to cooperate or were not able to provide substantial information to assist in this investigation." *Id.* at ¶¶ 35-37. Additionally, Special Agent Simmonds stated that grand jury subpoenas would most likely not be completely or even partially successful in achieving the stated goals of the investigation and that it would be unwise to seek any kind of immunity for any of the targets of the investigation because the granting of such immunity might foreclose prosecution of the most culpable members of this conspiracy. *Id.* at ¶ 38.

With respect to confidential witnesses, Special Agent Simmonds stated that CW #1 "does not know all the associates, all of **Wright's** methods of operation, or the identity of **Wright's** cocaine suppliers" and that CW #2 "has not been able to penetrate this organization any further." *Id.* at ¶¶ 39-40. Special Agent Simmonds further stated that "it is unlikely in this point of the investigation that any new cooperating witnesses could be recruited that would be able to infiltrate the **Wright** organization to an extent which would assist in targeting high level members of the organization. At least four other individuals have been approached to assist law enforcement but

no one has agreed to assist or have been able to assist in this investigation." *Id.* at ¶¶ 40-41. Special Agent Simmonds also stated that the plan to use an undercover investigator was abandoned when, during a controlled purchase, one of the distributors was unfamiliar with a vehicle in the area and wanted to shoot at the vehicle which was occupied by a law enforcement officer who was conducting surveillance. *Id.* at ¶ 42. Finally, in his Affidavit Special Agent Simmonds stated that Wright has several vehicles registered at different addresses and the true location of his residence is unknown, making garbage seizures impossible. *Id.* at ¶¶ 46, 48.

Upon review of the July 15, 2008 Application, including Special Agent Simmonds' affidavit, the Court finds the government's explanations in its application comprise "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Accordingly, the Court finds the government has satisfied the "necessity" requirement and the July 16, 2008 Wiretap need not be suppressed.

        2.      August 14, 2008 Wiretap

The August 14, 2008 Wiretap is an extension of the July 16, 2008 Wiretap and adds ten individuals, including Fletcher, as targets/named interceptees. In the application, however, the government fails to show that normal investigative procedures were ever attempted and failed or were unlikely to succeed or were too dangerous as to any of the new targets/named interceptees. The "necessity" portion of Special Agent Simmonds' affidavit only references Wright with any particularity. The remainder of the "necessity" portion merely contains boilerplate allegations that would apply to any drug conspiracy.

"[G]eneralities, or statements in the conclusory language of the statute, are insufficient to support a wiretap application. The statements must be factual in nature and they must specifically relate to the individuals targeted by the wiretap." *Castillo-Garcia*, 117 F.3d at 1188 (emphasis added). Because the government failed to show that any investigative procedures were ever attempted against any of the named interceptees other than Wright and failed to explain why these procedures were not attempted in terms adequately particularized to the facts of this case, the Court finds that the August 14, 2008 Wiretap and all evidence obtained from that wiretap should be suppressed.

        3.      August 22, 2008 Wiretap

In its application, the government states that normal investigative procedures have been tried with limited success, reasonably appear unlikely to succeed if continued, reasonably appear unlikely to succeed if tried, or are too dangerous to employ. Specifically, in his affidavit, Special Agent Simmonds stated that the neighborhood in which Fletcher lives is insulated by the North Canadian River and the residents in the area are very suspicious of new people or vehicles in the area and that there are no locations where law enforcement can sit to observe Fletcher's residence that will not arouse the suspicion of neighbors. Affidavit of Special Agent Simmonds in support of August 22, 2008 Application at ¶¶ 41, 43. Special Agent Simmonds further stated that during an attempted controlled purchase with Fletcher, a cooperating witness spoke to one of the distributors who was unfamiliar with a vehicle in the area, and the distributor wanted to shoot at the vehicle, which was occupied by law enforcement conducting surveillance. *Id.* at ¶ 42. In his affidavit, Special Agent Simmonds also stated that on one occasion as a surveillance vehicle drove by, Wright spotted the

vehicle and attempted to call numerous individuals, including Fletcher, to warn them about the presence of law enforcement. *Id.* at ¶ 45.

With respect to pen registers and telephone tolls, Special Agent Simmonds stated that while pen registers and telephone toll records have been used in this investigation, these tools do not identify the individuals actually talking on telephones or the content of their conversations, cannot identify the nature or substance of the conversation or differentiate between legitimate calls and calls for criminal purposes. *Id.* at ¶¶ 46-47. Further, Special Agent Simmonds stated that these techniques have been exhausted and are not expected to yield any more results other than identifying telephone numbers in contact with the target telephone. *Id.*

In his Affidavit, Special Agent Simmonds also stated that a search of Fletcher's residence:

> will likely not identify the scope of the **Fletcher** organization, its sources of supply, or additional assets of the organization. While numerous individuals have been identified by pen register analysis, no probable cause exists to search their residences, if the residence address is known. Other potential conspirators identified to date are known to move frequently and not reside anywhere permanently. Still other conspirators have only been identified by nickname or street name, such as "Little Murder One." So, no residence or location has been identified as being associated with this particular individual. Even if identifiable locations were searched and narcotics or other contraband is seized, the members of the conspiracy who are not present at the time of the search may not later be held accountable for their role in the conspiracy.

*Id.* at ¶ 49. With respect to the use of arrest warrants and suspect interviews, Special Agent Simmonds stated that Fletcher and other potential conspirators have been arrested numerous times and have never been known to cooperate and that members of the Shotgun Crips have been arrested and approached to cooperate. The individuals either refused to cooperate or were not able to provide significant assistance to the investigation. *Id.* at ¶¶ 51-55. Additionally, Special Agent Simmonds

stated that grand jury subpoenas would most likely not be completely or even partially successful in achieving the stated goals of the investigation and that it would be unwise to seek any kind of immunity for any of the targets of the investigation because the granting of such immunity might foreclose prosecution of the most culpable members of this conspiracy. *Id.* at ¶ 56.

With respect to confidential witnesses, Special Agent Simmonds stated that "[w]hile CW #1 has specific knowledge of **Fletcher**, some of his activities, and some of his associates, CW #1 does not know all the associates, all of **Fletcher's** methods of operation, or the identity of **Fletcher's** cocaine suppliers", that CW #2 "has not been able to make direct contact with **Fletcher** and currently is not in a position to provide information concerning the criminal activities of **Fletcher**", and that CW #3 and CW #4 have not been able to provide any information about the criminal activities of Fletcher. *Id.* at ¶¶ 57-59. Special Agent Simmonds further stated that "[a]t least four other individuals have been approached to assist law enforcement but no one has agreed to assist or have been able to assist in this investigation" and that "it is unlikely in this point of the investigation that any new cooperating witnesses could be recruited that would be able to infiltrate the **Fletcher** organization to an extent which would assist in targeting high level members of the organization." *Id.* at ¶¶ 60-61. Special Agent Simmonds also stated that "[a]t this point in the investigation, a cooperating witness is not in a position to introduce an undercover investigator to **Fletcher**." *Id.* at ¶ 62. Finally, in his Affidavit Special Agent Simmonds stated that Fletcher's current home addresses have not been verified, making garbage seizures impossible. *Id.* at ¶ 68.

Upon review of the August 22, 2008 Application, including Special Agent Simmonds' affidavit, the Court finds the government's explanations in its application comprise "a full and complete statement as to whether or not other investigative procedures have been tried and failed

or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Accordingly, the Court finds the government has satisfied the "necessity" requirement and the August 22, 2008 Wiretap need not be suppressed.

III.   Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Fletcher's Motion to Adopt Co-Defendant Johnson's Motions to Suppress Title III Wiretaps [docket no. 309] as follows:

(A)   The Court GRANTS the motion to suppress as to the August 14, 2008 Wiretap and SUPPRESSES the August 14, 2008 Wiretap and all information obtained from that wiretap based upon the government's failure to satisfy the necessity requirement, and

(B)   The Court DENIES the motion to suppress as to the July 16, 2008 Wiretap and the August 22, 2008 Wiretap.

**IT IS SO ORDERED this 9th day of June, 2009.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE